UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| KAPTAN DEMIR CELIK ENDUSTRISI VE TICARET A.S.,<br><br>*Plaintiff,*<br><br>v.<br><br>THE UNITED STATES<br><br>*Defendant.* | Court No. 24-00018 |

## COMPLAINT

Pursuant to Rule 3(a)(2) of the Rules of the United States Court of International Trade, Kaptan Demir Celik Endustrisi ve Ticaret A.S. ("Plaintiff") by and through its attorneys, alleges and states as follows:

### ADMINISTRATIVE DECISION TO BE REVIEWED

1. This is an appeal from the final results of the antidumping duty administrative review of *Steel Concrete Reinforcing Bar From the Republic of Turkey* ("Rebar from Turkey"). The period of review ("POR") is July 1, 2021 through June 30, 2022.

2. On December 28, 2023, the U.S. Department of Commerce, International Trade Administration, Enforcement and Compliance ("Commerce") published its final results finding that rebar from Turkey is being or is likely being sold at less than normal value in the United States. *See Steel Concrete Reinforcing Bar From the Republic of Turkey: Final Results of Antidumping Duty Administrative Review; 2021– 2022*, 88 Fed. Reg. 89663 (Dep't Commerce Dec. 28, 2023) ("*Final AD Results*"). Commerce's factual and legal conclusions underlying the *Final AD Results* are set forth in its Issues and Decision Memorandum. Memorandum from S.

1

Fullerton to J. Maeder, re: Issues and Decision Memorandum for the Final Results of the Antidumping Duty Administrative Review Antidumping; 2021-2022 (Dec. 20, 2023) ("*Final I&D Memo*").

## JURISDICTION

3. Plaintiff brings this action pursuant to Sections 516A(a)(2)(A)(i)(I) and 516A(a)(2)(B)(iii) of the Tariff Act of 1930, *as amended* (the "Act"), 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and 1516a(a)(2)(B)(iii). Plaintiff contests Commerce's *Final AD Results*, specifically as applied to Plaintiff. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c).

## STANDING

4. Plaintiff is an interested party to the proceeding under Sections 516A(f)(3) and 771(9)(A) of the Act, codified at 19 U.S.C. §§ 1516a(f)(3) and 1677(9)(A), respectively. Plaintiff is a foreign manufacturer and exporter of the subject merchandise, and participated actively at all stages of the review by submitting questionnaire responses and administrative case briefs.

5. Plaintiff, therefore, has standing to bring this action under 28 U.S.C. § 2631(c).

## TIMELINESS OF THIS ACTION

6. This Complaint is being filed within thirty (30) days of the filing of Plaintiff's summons in this action. The summons was timely filed on January 29, 2024 (ECF No. 1), within thirty (30) days of Commerce's publication of the *Final AD Results*. *See* 88 Fed. Reg. at 89663. In accordance with USCIT R. 3(a)(2), 5(e) and 6(a), and pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and 28 U.S.C. § 2636(c), Plaintiff's Complaint is timely.

## STANDARD OF REVIEW

7.  This Court must remand any administrative determination by Commerce which is "unsupported by substantial evidence on the record" as a whole, or is "otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

8.  When reviewing whether Commerce's actions are unsupported by substantial evidence, the Court assesses whether the agency action is "unreasonable" given the record as a whole. *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006). Substantial evidence represents "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *DuPont Teijin Films USA, LP v. United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

9.  When reviewing Commerce's statutory interpretations, the Court applies the two-part framework set forth in the Supreme Court's opinion in *Chevron*. *Union Steel v. United States*, 713 F.3d 1101, 1106–07 (Fed. Cir. 2013) (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,* 467 U.S. 837, 842–43 (1984)). Under *Chevron*, to determine whether an agency's interpretation of the statute is entitled to deference, the Court conducts a two-part test. Under the first prong of this test, where Congress has spoken directly to the question at issue, the Court and the agency must give effect to the unambiguously expressed intent of Congress. *See* 467 U.S. at 842–43. If, however, the statute is vague or silent on an issue, the Court upholds the agency's interpretation provided that the interpretation is reasonable. *See id*. at 843.

10. This Court has found Commerce's determinations unlawful "where Commerce has failed to carry out its duties properly, relied on inadequate facts or reasoning, or failed to provide an adequate basis for its conclusions." *Rhone-Poulenc, Inc. v. United States*, 20 CIT 573, 575, 927 F. Supp. 451, 454 (1996); *see also Asociacion Colombiana de Exportadores de Flores, v. United States*, 22 CIT 173, 185, 6 F. Supp. 2d 865, 880 (1998).

## STATEMENT OF FACTS

11. On July 1, 2022, Commerce published a notice of opportunity to request a review of the AD order on rebar from Turkey covering the period of July 1, 2021 through June 30, 2022. *See Antidumping or Countervailing Duty Order, Finding or Suspended Investigation; Opportunity to Request Administrative Review and Join Annual Inquiry Service List*, 87 Fed. Reg. 39461 (Dep't Commerce July 1, 2022).

12. On July 27, 2022, Kaptan requested an administrative review of its sales and shipments of subject merchandise for the administrative review period of July 1, 2021 through June 30, 2022.

13. On September 6, 2022, Commerce initiated an administrative review of the antidumping order on steel concrete reinforcing bar (rebar) from the Republic of Turkey covering the period of review July 1, 2021 through June 30, 2022. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 87 Fed. Reg. 54463 (Dep't Commerce Sept. 6, 2022).

14. Kaptan was selected as a mandatory respondent in Commerce's review. Throughout the review Kaptan submitted timely and complete responses to Commerce's questionnaires. *See* Kaptan's Response to the Department's Section A Questionnaire (Nov. 7, 2022); Kaptan's Response to the Department's Section B Questionnaire (Dec. 8, 2022); Kaptan's Response to the Department's Section C Questionnaire (Dec. 8, 2022); and Kaptan's Response to the Department's Section D High Inflation Questionnaire (Dec. 8, 2022); Kaptan's Response to the Department's Supplemental Sections A-C Questionnaire (June 1, 2023); Kaptan's Response to the Department's Supplemental Section D Questionnaire (June 29, 2023); and Kaptan's Responses to the Department's Third and Fourth Supplemental Questionnaires (July 20, 2023).

15. On July 26, 2023, Commerce issued its preliminary results in which it assigned Kaptan an individual rate of 29.30 percent. *Steel Concrete Reinforcing Bar From the Republic of Turkey*, 88 Fed. Reg. 50100, 50101 (Dep't Commerce Aug. 1, 2022) (prelim. AD results & prelim. determ. of no shipments; 2020-2021), and accompanying Decision Memorandum (*Preliminary AD Results*).

16. Although Kaptan reported its date of sale as the contract date and provided record evidence demonstrating that the material terms of sale did not and could not change after that date, Commerce relied on the invoice date as the date of sale for U.S. sales in the *Preliminary Results*. *See Preliminary AD Results* at 9.

17. Commerce also calculated differences in merchandise ("DIFMER") adjustment based on the weight averaging and indexing of reported monthly costs, rather than the per unit costs reported by Kaptan, which significantly inflated the calculated dumping margin due to timing differences. *See Preliminary AD Results* at 23.

18. Kaptan submitted a case brief to Commerce addressing these issues on August 31, 2023 ("Kaptan Case Brief"). Specifically, in its case brief, Kaptan provided ample record evidence and precedent demonstrating differences from prior administrative reviews that justified use of contract date as the appropriate U.S. date of sale. *See* Kaptan Case Brief at 2-28. Specifically, Kaptan demonstrated that the material terms of Kaptan's U.S. sales were set in the contract and did not change. *Id.* 26-22. Indeed, post contract amendments or other changes to the material terms of sale after the contract date were prohibited by a board resolution in effect during the POR. *Id.* at 23. Given the facts on the record, Commerce improperly ignored its obligation to review the unique circumstances and factual evidence on the record of this review when making its date of sale determination. Given the unique facts of this review cycle, in which

the contracts did not and could not change prior to the invoice date for Turkish Respondents, Commerce should have relied on contract date as the date of U.S. sales because that was the date on which material terms of U.S. sales were fixed. *Id.* at 30-31.

19. With regards to the DIFMER adjustment, Kaptan argued that Commerce's methodology conflicted with its longstanding practice that per unit cost differences only reflect differences between product characteristics, not other factors like timing differences. *Id.* at 31. Kaptan also presented evidence of distortions stemming from Commerce's calculations which, among other things, caused a negative reported DIFMER to turn positive. *Id.* at 32-33. As Kaptan explained, instead of calculating DIFMER adjustment for each month of the POR using averaging and indexing, Commerce should have simply calculated and used a monthly DIFMER adjustment from unindexed submitted per unit costs. *Id.* at 33.

20. On December 20, 2023, Commerce issued its *Final AD Results*, in which it continued to rely on the earlier of shipment or invoice date as the date of sale for Kaptan's U.S. sales. *See Final I&D Memo* at 13-21.

21. In its *Final AD Results*, Commerce also did not revise the calculation of Kaptan's DIFMER. *See Final I&D Memo* at 22-24.

22. The *Final AD Results* are unsupported by substantial evidence on the record and are otherwise not in accordance with law with respect to the matters set forth below.

## STATEMENT OF CLAIMS

### COUNT I

23. The facts and allegations contained in paragraphs 1 through 22 are restated and incorporated herein by reference.

24. Commerce's decision with respect to Kaptan's date of sale is not based on substantial evidence or in accordance with law.

25. Commerce's regulations provide that "normally" Commerce "will use the date of invoice" as the date of sale unless "a different date better reflects the date on which the exporter or producer establishes the material terms of sale" 19 C.F.R. § 351.401(i). This review contains evidence that the contract date "better reflects the date on which" Kaptan establishes the material terms of sale. Nevertheless, Commerce relied on invoice date as the date of sale in the *Final AD Results* because the terms and conditions of Kaptan's sales contracts can *hypothetically* change.

26. However, Commerce's determination overlooks substantial evidence on the record that the material terms in Kaptan's contracts did not *actually* change, and that such changes were in fact prohibited. Specifically, Kaptan provided information demonstrating that the contract set the price and overall quantity, and these terms were consistent with the terms of the final invoice for all period of review sales. Moreover, a board resolution in effect during the POR explicitly provides that such changes cannot occur.

27. Read together, these facts establish that Kaptan's contracts are binding and that there can be no changes in the terms of the sale. Thus, Commerce's decision with respect to the date of sale is not in accordance with law or based on substantial evidence.

**COUNT II**

28. The facts and allegations contained in paragraphs 1 through 27 are restated and incorporated herein by reference.

29. Commerce's longstanding Commerce practice is that per unit cost differences for the reported cost of production for different CONNUMs should only reflect differences between product characteristics. In the *Final AD Results*, however, Commerce inflation-adjusted its calculation of the DIFMER adjustment for each month of the POR using averaging and indexing. This methodology resulted in distortions caused purely by time differences, which have nothing to do with differences in physical characteristics.

30. Consistent with Commerce's high inflation methodology, Kaptan accurately reported its monthly per unit costs for each CONNUM in this review. Rather than weight averaging and indexing those reported costs, Commerce should have simply calculated and used a monthly DIFMER adjustment from unindexed submitted per unit costs. Thus, Commerce's decision with respect to the DIFMER adjustment is not in accordance with law or based on substantial evidence.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request this Court to:

(a) Hold that Commerce's *Final AD Results* were not in accordance with law or unsupported by substantial record evidence with respect to the claims advanced by Plaintiff in this Complaint;

(b) Remand the *Final AD Results* to Commerce for determination consistent with the opinion of this Court; and

Grant such additional relief as the Court may deem just and proper.

/s/ **Leah N. Scarpelli**
Leah N. Scarpelli
Jessica R. DiPietro
Matthew M. Nolan

ArentFox Schiff LLP
1717 K Street, N.W.
Washington, DC 20006
Phone: (202) 715-8403

*Counsel to Kaptan Demir Celik Endustrisi Ve Ticaret A.S.*

Dated: February 26, 2023