## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **KAPTAN DEMIR CELIK ENDUSTRISI VE TICARET A.Ş.,**<br><br>        Plaintiff,<br><br>        and<br><br>**ICDAS CELIK ENERJI TERSANE VE ULASIM SANAYI A.Ş.,**<br><br>        Plaintiff-Intervenor,<br><br>        v.<br><br>**UNITED STATES,**<br><br>        Defendant,<br><br>        and<br><br>**REBAR TRADE ACTION COALITION,**<br><br>        Defendant-Intervenor. | Before: Hon. Jane A. Restani, Judge<br><br>Ct. No. 24-00018 |

## REBAR TRADE ACTION COALITION'S RESPONSE TO MOTIONS FOR STATUTORY INJUNCTION AND INTERVENTION

> Alan H. Price, Esq.
> John R. Shane, Esq.
> Maureen E Thorson, Esq.
> Stephen A. Morrison, Esq.
>
> WILEY REIN LLP
> 2050 M Street, NW
> Washington, DC 20036
> (202) 719-7000
>
> *Counsel to the Rebar Trade Action Coalition*

**Dated: August 1, 2024**

Ct No. 24-00018

## **TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................1

II. STATEMENT OF FACTS ..........................................................................................1

III. SUMMARY OF ARGUMENT ...................................................................................3

IV. ARGUMENT................................................................................................................3

    A. The Court Should Deny Habas's Motion for Statutory Injunction and Dissolve the TRO ........................................................................................3

    B. The Court Should Deny Habas's Motion to Intervene ............................................6

        i. Habas Has Not Shown Good Cause for Untimely Filing Its Motion to Intervene.................................................................................................. 6

        ii. Any of Habas Entries Subject to This Administrative Review Have Been Liquidated, Mooting Habas's Claims .................................... 8

V. CONCLUSION...........................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*An Giang Fisheries Imp. and Exp. Joint Stock Co. v. United States*,
 211 F. Supp. 3d 1346 (Ct. Int'l Trade 2017) .................................................................3, 4, 5

*Carpenter Tech. Corp. v. United States*,
 31 CIT 1, 469 F. Supp. 2d 1313 (2007) ...............................................................................7

*Geum Poong Corp. v. United States*,
 26 CIT 908, 217 F. Supp. 2d 1342 (2002) ...........................................................................6

*Home Prods. Int'l, Inc. v. United States*,
 31 CIT 1706, 521 F. Supp. 2d 1382 (2007) .........................................................................7

*Nken v. Holder*,
 556 U.S. 418 (2009) .............................................................................................................4

*Siam Food Products Public Co. v. United States*,
 22 CIT 826, 24 F. Supp. 2d 276 (1998) ......................................................................6, 7, 8

*SKF USA, Inc. v. United States*,
 512 F.3d 1326 (Fed. Cir. 2008) .........................................................................................8, 9

*Sumitomo Metal Industries, Ltd. v. Babcock & Wilcox Co.*,
 669 F.2d 703 (C.C.P.A. 1982) .............................................................................................6

*Winter v. Nat. Res. Def. Council, Inc.*,
 555 U.S. 7 (2008) .................................................................................................................4

*YC Rubber Co. (N. Am.) LLC v. United States*,
 415 F. Supp. 3d 1240 (Ct. Int'l Trade 2019) ........................................................................4

*Zenith Radio Corp. v. United States*,
 710 F.2d 806 (Fed. Cir. 1983) .....................................................................................3, 4, 5, 9

**Administrative Materials**

*Steel Concrete Reinforcing Bar from the Republic of Turkey*,
 88 Fed. Reg. 89,663 (Dep't Commerce Dec. 28, 2023) ...................................................1, 2

**Other Authorities**

U.S. CIT Rule 24 ...........................................................................................................................8

**Ct. No. 24-00018**

U.S. CIT Rule 24(a) ............................................................................................................6

Ct. No. 24-00018

I. **INTRODUCTION**

On behalf of the Rebar Trade Action Coalition ("RTAC"),[1] we respectfully submit the following response to Habas Sinai ve Tibbi Gazlar Istihal Endustrisi A.S.'s ("Habas") motion to intervene, Partial Consent Mot. of {Habas} to Intervene as a Matter of Right (July 11, 2024), ECF No. 38 ("Mot. to Intervene"), and Habas's motion for statutory injunction, Partial Consent Mot. of Proposed Pl.-Int. {Habas} for Statutory Inj. (July 11, 2024), ECF No. 39 ("Mot. for SI"). RTAC respectfully requests that the court reconsider its order granting Habas's motion to intervene, *see* Order (July 12, 2024), ECF No. 40, and requests that the court deny the motion to intervene, deny the motion for statutory injunction, and dissolve the temporary restraining order ("TRO").

II. **STATEMENT OF FACTS**

This action arises from the 2021-2022 administrative review of the antidumping duty order on steel concrete reinforcing bar ("rebar") from Turkey. *See* Mot. to Intervene at 1; *see also Steel Concrete Reinforcing Bar from the Republic of Turkey*, 88 Fed. Reg. 89,663 (Dep't Commerce Dec. 28, 2023) (final results of antidumping duty admin. rev.; 2021-2022), P.R. 154[2] ("*Final Results*"). Turkish rebar producers Colakoglu Metalurji A.S./Colakoglu Dis Ticaret A.S. and Kaptan Demir Celik Endustrisi ve Ticaret A.S./Kaptan Metal Dis Ticaret Ve Nakliyat A.S. ("Kaptan") were selected as mandatory respondents in the review. *See* Respondent Selection Mem. for Admin. Review of the Antidumping Duty Order on {Rebar} from the Republic of Turkey; 2021-2022 (Oct. 7, 2022), C.R. 5, P.R. 29. Habas was not selected, and was a non-

---

[1] The individual members of the Rebar Trade Action Coalition are Byer Steel Group, Inc., Commercial Metals Company, Gerdau Ameristeel U.S. Inc., Nucor Corporation, and Steel Dynamics, Inc.

[2] References made herein to the confidential administrative record ("C.R.") and public administrative record ("P.R.") correspond to the document numbers as filed by the Department of Commerce with the court on Apr. 4, 2024. *See* Administrative Record Index (Apr. 4, 2024), ECF No. 29-1.

mandatory respondent. *See* Mot. to Intervene at 3. The *Final Results* informed interested parties that Commerce would issue liquidation/assessment instructions to U.S. Customs and Border Protection ("CBP") no earlier than 35 days after the publication of the *Final Results*, and that if a summons was filed at the U.S. Court of International Trade ("USCIT"), the instructions would direct CBP not to liquidate relevant entries until the time for parties to request a statutory injunction had expired (*i.e.*, within 90 days of publication of the *Final Results*). *Final Results*, 88 Fed. Reg. at 89,664.

On January 29, 2024, Kaptan filed a summons with the court. Summons (Jan. 29, 2024), ECF No. 1. Twenty-eight days later, on February 26, 2024, Kaptan filed a complaint challenging certain aspects of the *Final Results*. Compl. (Feb. 26, 2024), ECF No. 9. Subsequently, RTAC timely moved to intervene, as did Icdas Celik Enerji Tersane ve Ulasim Sanayi A.Ş., a non-mandatory respondent in the administrative review. *See* RTAC Consent Mot. to Intervene as a Matter of Right (Mar. 6, 2024), ECF No. 22; Icdas Corrected Consent Mot. to Intervene as a Matter of Right (Feb. 27, 2024), ECF No. 19.

On March 27, 2024, the court's deadline for intervention passed, without any intervention motion from Habas, or any attempt to enjoin liquidation of its entries during the review period. *See* USCIT R. 24(a)(3). CBP liquidated Habas's sole[3] review period entry on June 7, 2024, seventy-two days after the deadline to intervene had passed, and 162 days after publication of the *Final Results*. *See* Mot. to Intervene at 6 n.1.

---

[3] In its motion to intervene, Habas indicates that it had one entry during the review period. *See* Mot. to Intervene at 6 n.1. However, in the attachments to a subsequent filing made on July 30, 2024, Habas suggests that it made two entries during the review period. Notification of Updated Information Concerning Status of Entries Subject to TRO (July 30, 2024), ECF No. 45-1 at Exhibit 2 ("Notification"). Regardless, it appears that liquidation occurred on June 7, 2024, well before Habas sought either intervention or an injunction. *See id.*

Ct. No. 24-00018

On July 11, 2024, nearly three-and-a-half months after the deadline to intervene, and more than a month after any relevant entries had liquidated, Habas filed a motion to intervene in this case, as well as a motion to enjoin liquidation of its entry or entries. *See* Mot. to Intervene; Mot. for SI.

### III. SUMMARY OF ARGUMENT

The court should deny Habas's motion for statutory injunction and its motion to intervene, and should dissolve the TRO. Any entries that Habas made during the period of review at issue in this proceeding have liquidated. Habas accordingly cannot show that it is entitled to the extraordinary relief of a preliminary injunction. Similarly, the court should deny Habas's motion to intervene because it has not shown good cause for its untimely motion. For that matter, Habas has no basis for intervention given that any entries it made during the underlying administrative review period have liquidated.

### IV. ARGUMENT

In its motion to intervene and in its motion for statutory injunction, Habas argues that good cause exists to grant both motions. As explained below, these arguments are not convincing, and the court should deny both motions.

#### A. The Court Should Deny Habas's Motion for Statutory Injunction and Dissolve the TRO

The court should deny Habas's motion for statutory injunction and dissolve the TRO, as judicial review is unavailable for liquidated entries. *See, e.g.*, *Zenith Radio Corp. v. United States*, 710 F.2d 806, 810 (Fed. Cir. 1983); *An Giang Fisheries Imp. and Exp. Joint Stock Co. v. United States*, 211 F. Supp. 3d 1346, 1351 (Ct. Int'l Trade 2017).

To obtain the extraordinary relief of a preliminary injunction, Habas must establish that (1) it is likely to suffer irreparable harm without a preliminary injunction, (2) it is likely to succeed

3

on the merits, (3) the balance of the equities favors Habas, and (4) the injunction is in the public interest. *See, e.g.*, *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Zenith*, 710 F.2d at 809. Irreparable harm and likelihood of success on the merits are generally considered the most significant factors in evaluating a motion for injunctive relief. *See Nken v. Holder*, 556 U.S. 418, 434 (2009). As RTAC details below, Habas has failed to establish these factors.

First, the irreparable harm that Habas seeks to prevent has already occurred. In *Zenith*, the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") held that judicial review of antidumping duty determinations is unavailable for liquidated entries. 710 F.2d at 810. While this fact justifies enjoining the liquidation of as-yet unliquidated entries to preserve jurisdiction, an injunction against liquidation is necessarily ineffective where liquidation has already occurred. Here, Habas's entry (or entries) of subject merchandise liquidated well before the company sought either intervention or an injunction. In other cases in which parties have sought to enjoin a liquidation that has already occurred, the court has reasoned that "{a}n injunction is improper in these circumstances because it is not necessary to prevent irreparable harm." *An Giang Fisheries*, 211 F. Supp. 3d at 1352; *see also YC Rubber Co. (N. Am.) LLC v. United States*, 415 F. Supp. 3d 1240, 1245 (Ct. Int'l Trade 2019) (denying motion to modify injunction where movant knew that entries had been liquidated and did not seek to intervene in the action until after liquidation had occurred).

Second, Habas has not established that it is likely to succeed on the merits. In its motion for statutory injunction, Habas claims that Kaptan has raised issues that are serious and substantial, and are therefore likely to succeed. *See* Mot. for SI at 5-6. However, even if Kaptan is successful in its claims, this would have no practical bearing on entries that have already liquidated. Indeed, Habas cites no authority for applying a statutory injunction to entries that were liquidated before a

statutory injunction covering those entries took effect. Rather, because judicial review is unavailable for liquidated entries, 710 F.2d at 810, Habas's claims as to the dumping margin assessed on its entry/entries during the review period are moot. *See id.*

Third, the balance of hardships does not favor Habas. This court has found that "{w}here . . . a party fails to act in a timely fashion to prevent liquidation of certain entries during a time that it could have prevented liquidation," the balance of the hardships does not tip in favor of that party. *An Giang Fisheries*, 211 F. Supp. 3d at 1352. Here, Habas could have prevented liquidation by timely seeking intervention and an injunction. Moreover, Habas has other potential means of seeking redress—it can protest the liquidation of its entry/entries with CBP and, indeed, appears to have done so. *See* Mot. to Intervene at 6 n.1; Notification at Exhibit 2.[4] This further undermines its claims regarding the balance of hardships.

Finally, the public interest weighs in favor of denying Habas's motion for statutory injunction. As the court has made clear, "{a}bsent extraordinary circumstances, parties should be required to follow reasonable procedures and policies that ensure fair and uniform enforcement of the antidumping laws." *An Giang Fisheries*, 211 F. Supp. 3d at 1353. Habas had at least constructive notice of Commerce's *Final Results* and intention to order CBP to liquidate entries made by non-selected respondents by virtue of the *Final Results*' publication in the *Federal Register*. Kaptan also certified service of its complaint on Habas's counsel. Compl. Yet,

---

[4] Notwithstanding Habas's attempt to persuade CBP to the contrary, neither the TRO nor the corresponding instructions that Commerce issued to CBP imposed any requirements as to entries that were liquidated before the TRO was sought or issued. *See* Notification at Exhibits 1-2. While Commerce instructed CBP that it should remove any as-yet-unliquidated Habas entries "set" for liquidation from the liquidation queue, the "unsetting" of a scheduled, future liquidation is not the same as the unworking of a liquidation that has already occurred. In any event, to the extent that Habas believes that CBP has misinterpreted judicial or Commerce instructions, that is a matter for protest and potential resolution through a protest appeal, and not a matter addressable in this litigation.

Ct. No. 24-00018

inconsistently with this notice and with established, standard timelines for appeal, intervention, and forestalling liquidation that would extinguish the court's jurisdiction, Habas failed to move to enjoin liquidation until after the liquidation had already occurred.

### B. The Court Should Deny Habas's Motion to Intervene

The court should deny Habas's motion to intervene because Habas has no right to intervene in this action as (1) it untimely filed its motion for intervention and has not shown good cause for its untimely motion and (2) its only entry or entries during the period of review in the underlying administrative review have already been liquidated, mooting its claims.

#### i. Habas Has Not Shown Good Cause for Untimely Filing Its Motion to Intervene

The court should deny Habas's untimely motion to intervene because Habas has not shown good cause for the late filing. USCIT Rule 24(a) provides that the court may waive the 30-day intervention deadline if the moving party can show good cause, *i.e.,* that the motion was untimely filed due to (1) mistake, inadvertence, surprise or excusable neglect or (2) under circumstances in which by due diligence a motion to intervene could not have been made within the 30-day period.

In arguing that its motion should be granted, Habas relies primarily on *Sumitomo Metal Industries, Ltd. v. Babcock & Wilcox Co.*, 669 F.2d 703, 707 (C.C.P.A. 1982), for a three-part test for determining whether a motion to intervene was timely filed. *See* Mot. to Intervene at 4-5. However, as this court observed in *Siam Food Products Public Co. v. United States*, 22 CIT 826, 827-28, 24 F. Supp. 2d 276, 278-79 (1998), *Sumitomo* predated the 1993 amendment to Rule 24(a) that added the 30-day time limit and is no longer good law with respect to this point. Habas's reliance on the obsolete timeliness test set forth in *Sumitomo* indicates that this motion should be denied. *See, e.g.*, *Geum Poong Corp. v. United States*, 26 CIT 908, 910, 217 F. Supp. 2d 1342,

Ct. No. 24-00018

1344 (2002) (denying motion to intervene where movants had "not even attempted to show good cause for failing to timely intervene").

Furthermore, Habas's excuse for filing late does not meet the good cause standard. Here, Habas's only explanation for not timely intervening was that Habas "mistakenly and inadvertently did not have the litigation deadlines calendared," Mot. to Intervene at 4. But not only did Habas fail to move to intervene within 30 days of the complaint, it also failed to move to intervene *within 30 days of the date that any relevant entries liquidated. See id.* at 6. While RTAC can appreciate that deadlines may on some occasions be calendared incorrectly, this does not explain why Habas waited more than a month after its review period entry or entries had liquidated to seek intervention, and more than two months after the standard intervention deadline. Notably, this court has found that good cause did not exist to excuse intervention motions that were far less tardy. For example, in *Siam Food*, the court held that a party's failure to "secure the necessary approval" of another party "until shortly before the filing" was not good cause for moving to intervene two weeks after the 30-day deadline. 22 CIT at 827, 830, 24 F. Supp. 2d at 280; *accord Carpenter Tech. Corp. v. United States*, 31 CIT 1, 4-5, 469 F. Supp. 2d 1313, 1317 (2007) (stating that good cause did not exist for and denying untimely filed preliminary injunction where movant filed the motion three weeks late because it was waiting for consent from opposing parties).

As this court has explained, "{t}he intent of the 30-day period in USCIT R. 24(a) is to avoid a scenario in which 'existing parties and the court might not know when to expect intervention, the proceedings on the merits could be interrupted and/or delayed by motions to intervene, and extra adjudication could be routinely required for parties who choose to file late.'" *Home Prods. Int'l, Inc. v. United States*, 31 CIT 1706, 1708, 521 F. Supp. 2d 1382, 1384-85 (quoting *Siam Food*, 22 CIT at 830, 24 F. Supp. 2d at 281). These are exactly the issues that Habas's late filing has

7

caused here. Instead of being able to focus on the substantive claims raised by Kaptan in its July 22, 2024 opening brief, the court and parties must instead address these procedural questions. Such a broad excuse as mistakenly forgetting to calendar a filing deadline would render "the actual time limit {of Rule 24} superfluous," particularly given the facts here. *Siam Food*, 22 CIT at 830, 24 F. Supp. 2d at 281.

Accordingly, the court should find that Habas has failed to show that good cause exists to waive the deadline for intervening.

### ii. Any of Habas Entries Subject to This Administrative Review Have Been Liquidated, Mooting Habas's Claims

Furthermore, the issues that Habas seeks to litigate in this case are moot because Habas's entries during the review period were lawfully liquidated well before the company sought intervention. Habas seeks to litigate this case in order for the court to remand the *Final Results* to Commerce, recalculate the antidumping margin for Kaptan, and, in turn, the "all-others" rate applicable to Habas as a non-mandatory respondent. Mot. to Intervene at 3. However, the Federal Circuit has held that, outside certain rare circumstances, "once liquidation occurs the trial court is powerless to order the assessment of duties at any different rate." *SKF USA, Inc. v. United States*, 512 F.3d 1326, 1328 (Fed. Cir. 2008) (citing *Zenith*, 710 F.2d at 810 (holding that "{o}nce liquidation occurs, a subsequent decision by the trial court on the merits of {a} challenge can have no effect on the dumping duties assessed")).

Indeed, the Federal Circuit has even held that this court is powerless to compel reliquidation of entries that were deemed liquidated while a motion for preliminary injunction was pending. *SKF*, 512 F.3d at 1327-32. In *SKF*, the plaintiff, SKF USA, Inc. ("SKF"), asked for an order enjoining liquidation throughout the pending litigation. *Id.* at 1328. While SKF's motion for injunction was pending before the court, its entries liquidated as a matter of law. *Id.* at 1329. The

Ct. No. 24-00018

government argued that because the entries had liquidated, the case was moot, and asked the trial court to dismiss the case. After this court nonetheless issued a backdated injunction, the Federal Circuit vacated the judgment and directed that the case be dismissed on the grounds that "backdating {} an injunction on liquidation that the court granted after the covered entries were liquidated would undermine the rule of *Zenith*." *Id.*

The same logic that applied in *SKF* also applies here. The entry or entries at issue liquidated prior to the court's TRO, and the court is "powerless to order the assessment of duties at {a} different rate," regardless of the outcome of Kaptan's appeal. *Id.* at 1328. Because liquidation has mooted Habas's claims, it lacks standing and should not be permitted to intervene. And while Habas might argue that it still has a live claim as to the cash deposit rate established by the *Final Results*, it has not moved to enjoin the collection of such cash deposits. Rather, it has only moved to enjoin an action—liquidation of its review period entry or entries—that had already occurred prior to its motion to intervene.[5] *See* Mot. for SI at 1-2 and Proposed Order.

---

[5] Further, Habas is subject to the ongoing 2022-2023 administrative review, the final results of which will supersede the cash deposit rate established in the review under appeal. The preliminary results of that review are due November 22, 2024.

9

Ct. No. 24-00018

## V.  CONCLUSION

For the reasons detailed above, this court should deny Habas's motion to intervene and its motion for statutory injunction.

Respectfully submitted,

/s/ John R. Shane
Alan H. Price, Esq.
John R. Shane, Esq.
Maureen E Thorson, Esq.
Stephen A. Morrison, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to the Rebar Trade Action Coalition*

Dated: August 1, 2024

## CERTIFICATE OF COMPLIANCE

Pursuant to the Court's Standard Chamber Procedure 2(B)(1), the undersigned certifies that this response complies with the word limitation requirement. The word count for Defendant Intervenor Rebar Trade Action Coalition's Response to Motions for Statutory Injunction and Intervention, as computed by Wiley Rein LLP's word processing system (Microsoft Word), is 2,977 words.

*/s/ John R. Shane*
John R. Shane

*Counsel for Rebar Trade Action Coalition*